UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FRANCISCO JOSE BACA,

     Petitioner,

v.                                                                                       Case No. 3:20cv5357-MCR-HTC

SECRETARY FLORIDA DEPARTMENT
 OF CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Francisco Jose Baca, proceeding *pro se*, filed an amended petition under 28 U.S.C. § 2254 challenging his conviction in the circuit court of Escambia County, Florida, 2016 CF 3542 for sexual battery with a deadly weapon likely to cause serious personal injury. ECF Doc. 8. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).

After considering the amended petition, the supporting memorandum, ECF Doc. 9, the Secretary's response, ECF Doc. 25, and the record, ECF Doc. 25-1 to

25-26, the undersigned recommends the Petition be DENIED without an evidentiary hearing.[1]

## I.    BACKGROUND

Petitioner was charged on May 3, 2017, with an amended information for three (3) counts of sexual battery with a deadly weapon, likely to cause serious personal injury.[2]    ECF Doc. 25-2 at 14; 2016 CF 3542.    Petitioner pled *nolo contendere* to the first count, and the State announced *nolle prosequi* as to the second and third counts.    *See* ECF Doc. 25-2 at 37.    On the same day, Petitioner was sentenced to thirteen (13) years' imprisonment on Count One, and the other counts were dismissed.    *Id.* at 39-43.    Petitioner did not file a direct appeal.

Petitioner initiated the instant case by delivering a federal petition to prison mail officials on March 30, 2020.    ECF Doc.    1.    In a previous Order Adopting Report and Recommendation, the District Judge found the petition timely filed, so the undersigned will not repeat that analysis in this Report.    *See* ECF Doc. 23 (August 28, 2020) (adopting Report and Recommendation, ECF Doc. 20).    There is also no issue regarding exhaustion as the Secretary admits "Petitioner exhausted his state remedies by bringing the same or very similar grounds in a 3.850 motion in the

---

[1] The Court gave Petitioner multiple opportunities and more than fifteen (15) months to file a reply, but he failed to do so.  *See* ECF Doc. 71 (discussing Petitioner failure to file a reply).

[2] According to the arrest report and the victim's deposition, the Petitioner, who the victim did not know, propositioned the victim for sex and then sexually assaulted her, while using a box cutter to threaten and injure her.  ECF Doc. 25-2 at 45, ECF Doc. 25-1 at 112.

postconviction court and then appealing the denial of that motion." ECF Doc. 25 at 6. Thus, the undersigned considered the Petitioner's grounds for relief on their merits.

## II.    ISSUES PRESENTED

Petitioner brought six (6) grounds for relief in his amended petition:

**Ground One**: Ineffective assistance of defense counsel ("IADC") for failing to provide Petitioner with discovery which, if provided, would have convinced Petitioner not to plead guilty but to insist on going to trial;

**Ground Two**:  Trial Court error when Judge coerced Petitioner to plead guilty by telling Petitioner that if he went to trial and lost, the Judge would "give Petitioner 50 years";

**Ground Three**: IADC for failing to move to disqualify judge for stating he would give a harsher sentence if Petitioner went to trial;

**Ground Four**: IADC for failure to obtain statements or depositions of the former boyfriend, the officer that took the victim to the hospital, Nurse Hall who examined her at the ER, or Rodney Filling (an RN who treated her on July 1, 2016);

**Ground Five**: IADC for failure "to conduct even a basic investigation into the facts of Petitioner's case despite the facts that Petitioner informed counsel that the victim was unstable" and failure to inform Petitioner of the victim's "lengthy mental health record that included several Baker Acts and lying to the authorities", which if Petitioner had known would have cause him to insist on going to trial; and

**Ground Six**:  IADC for failing to utilize as exculpatory evidence two cards or letters the victim had sent to the prosecutor regarding the victim's own "extremely serious set of criminal charges."

## III.   LEGAL STANDARDS

### A.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

The AEDPA governs a state prisoner's petition for habeas corpus relief.  28

U.S.C. § 2254.  Under that act, relief may only be granted on a claim adjudicated on

the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  *White*

*v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

"Clearly established federal law" consists of the governing legal principles set

forth in the decisions of the United States Supreme Court when the state court issued

its decision. *White*, 134 S. Ct. at 1702; *Casey v. Musladin*, 549 U.S. 70, 74 (2006)

(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  Habeas relief is appropriate

only if the state court decision was "contrary to, or an unreasonable application of,"

that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly

established federal law if the state court either: (1) applied a rule that contradicts the

governing law set forth by Supreme Court case law; or (2) reached a different result

from the Supreme Court when faced with materially indistinguishable facts.  *Ward*

*v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

### B.    IADC Claims

Five (5) of Petitioner's grounds are IADC claims.  An IADC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689.  The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## IV.   ANALYSIS

For the reasons discussed below, the undersigned finds no merit in any of Petitioner's grounds for relief.

### A.   Ground One: IADC For Failing to Provide Petitioner With Discovery

In the amended petition, Petitioner asserts "counsel rendered ineffective assistance by failing to provide Petitioner with what turned out to be two hundred and fifty (250) pages of important and exculpatory case-related facts, that had Petitioner known, would not have plead to the charge and would have insisted on going to trial." ECF Doc. 8 at 10. Petitioner does not specify the nature of the exculpatory material referenced, but argued in his post-conviction Rule 3.850 motion, that "Defendant made multiple request[s] to Attorney Brown to be allowed to read for himself the depositions of all the law enforcement officers involved in the case" and "made multiple requests to counsel to be allowed to view the medical records of the victim and also be allowed to read the deposition of the victim in an effort to be able to make an informed decision to sign the plea agreement with the state." ECF Doc. 25-1 at 6-7.

Petitioner claims had he been able to review that material, he would not have pled guilty and, instead, would have proceeded to trial. He claims the information in the materials he was later able to review in prison undermines some of the information counsel told him, including that his case was hopeless. Specifically,

Petitioner claims the materials show (1) "there is no weapon in state evidence" although counsel said there was, *id.* at 5-6; (2) the "exculpatory" and "inconclusive" nature of "findings of all medical personnel who examined the victim for evidence of any type of sexual assault"; and (3) the victim was working as a prostitute that night, did not immediately reported the rape, was unsure about the time of the rape, and had been trespassed from the women's shelter, *id.* at 6-10.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58-59. The Court held that, in the context of guilty pleas, the "first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson, supra,* and *McMann v. Richardson.*" *Id.* That is, the defendant must demonstrate his counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

In cases where a petitioner agrees to forego the right to trial and take a plea based on counsel's advice, the second or "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. In other words, to satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The state court judge applied *Strickland* in rejecting this claim.[3]  Specifically, the court noted that, "[w]hen the Defendant entered his plea, he would have been aware whether be had reviewed the discovery materials or not," and during the plea colloquy Petitioner admitted he was "definitely" satisfied with the services of defense counsel.  ECF Doc. 25-4 at 25.  Thus, because Petitioner was aware he had not reviewed the discovery materials he claimed to have asked for before entering into a plea, and entered a guilty plea nonetheless, Petitioner could not have been prejudiced by defense counsel's alleged failure to provide the materials to him.

The state court also determined none of the information Petitioner would have learned through the discovery materials would have made a difference.  In other words, there was no reasonable probability any of the information would have convinced Petitioner to proceed to trial rather than take the very favorable plea deal.

For example, Petitioner had not been prejudiced by any alleged misinformation he may have been given by defense counsel regarding the existence or nonexistence of a weapon.  As the state court determined, regardless of whether

---

[3] The First District Court of Appeals (1D19-2439) affirmed the denial of the postconviction motion on February 13, 2020, without written opinion.  ECF Doc. 25-5 at 2.  Therefore, for all the grounds in this amended petition, the court will "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale (the order denying the second amended 3.850 motion) and presume that the unexplained First DCA decision adopted the same reasoning. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)

the State had a physical weapon in hand, the victim testified Petitioner cut her and threatened her with a box cutter and law enforcement saw Petitioner with a box cutter shortly after the crime occurred. Thus, "[t]here is no reasonable probability the Defendant would have insisted on going to trial but for counsel's misadvice that the State had the weapon at issue in their physical custody." *Id.* at 26-27. The undersigned no error in the state court's findings or application of the law.

The state court also rejected Petitioner's claim regarding the victim's medical records as being "without merit." *Id.* at 27. As the state court stated, "[t]here is no reasonable probability that the Defendant would have gone to trial merely because the examination of the victim was 'inconclusive' as to physical evidence of sexual assault," *id.*, given examiner's testimony (discussed below). ECF Doc. 25-1 at 97. The state court also noted that the "relatively short delay in the victim's reporting of the sexual battery, given the victim's apparent poverty, is also not particularly noteworthy." ECF Doc. 25-4 at 27.

Finally, the state court determined Petitioner was not prejudiced in not learning about the victim's prior drug use, prostitution, and trespass because such evidence would not have been admissible under Florida law. *Id.* at 27-28. Thus, Petitioner had not shown "there is a reasonable probability he would have insisted on going to trial and risked a potential life sentence merely because of evidence that the victim may have been using drugs at the time of the crime." *Id.* at 28. Similarly, evidence of the victim's prior medical history would not have been admissible and,

even if it would have been, it would not have undermined the victim's "unequivocal" testimony that she was raped by the Petitioner. *Id.*

The undersigned finds the state court's denial of relief on this claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

First, as the state court noted, Petitioner represented he was "definitely" satisfied with defense counsel *and* made that representation when he knew he had not received the materials he claimed he requested. "[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Petitioner also admitted he knew at the time of entering his plea he did not have a box cutter on him when he was arrested, ECF Doc. 25-1 at 5. Thus, Petitioner knew counsel was mistaken as to that fact but chose to plead guilty anyway.

Second, the state judge's conclusion that the evidence concerning the box cutter would not have convinced Petitioner to go to trial was reasonable. On July 12, 2016, six (6) days after the victim's attack, Detective Savage saw a subject matching the description of the subject on the surveillance footage capturing the victim and a white male wearing a dark colored baseball cap pushing a bicycle as the victim had described. ECF Doc. 25-2 at 46. Detective Savage stopped to talk

with the suspect (who turned out to be Petitioner) and noticed Petitioner had "a yellow box cutter in his possession with a silver blade and the spare blades were visible in the center of the box cutter". *Id.* Therefore, even if Petitioner did not have the box cutter on his person on July 13, 2016, when he was arrested, *id.*, the description of the box cutter by the victim and the Detective could still be offered at trial. Therefore, there is not a reasonable probability that Petitioner would have insisted on going to trial simply because he did not have the box cutter when he was arrested.

Likewise, the state judge was not unreasonable in concluding Petitioner would not have insisted on going to trial based on the victim's medical evidence. Despite the "inconclusive" nature of the evidence, Nurse Practitioner Peterman acknowledged that the victim had lacerations and scratches on her hands, back, and left cheek, consistent with her description of the assault. ECF Doc. 25-1 at 84-85. Peterman also reported "skin tears in the anal region", *id.* at 85, which Dr. Lauthin confirmed were still present two days later and which were "certainly indicative of some sort of physical trauma to the area." *Id.* at 97. In other words, the medical evidence tended to inculpate rather than exculpate Petitioner. Therefore, Petitioner has not met his burden of showing this information would have caused him to insist on going to trial.

Finally, the state judge was not unreasonable in finding that evidence of the victim's prior drug use and mental health problems would not have caused Petitioner

to insist on going to trial.  The victim was cogent and specific in her statements to the police and in her deposition, and the statements were consistent with one another and the physical evidence.  Also, Nurse Practitioner Peterman specifically noted that the victim did not seem "under the influence of narcotics or anything like that" and noted, "If [he] felt that she was not neurologically appropriate, [he] would have documented that." *Id*. at 82.  Additionally, Nurse Practitioner Peterman implied the victim appeared "psychologically and neurologically and metabolically stable and intact" when he explained why he did not investigate further whether she had ingested illegal substances.  *Id*. at 84.  Finally, as discussed below in Ground Five, Petitioner claims he "informed counsel that the victim was unstable" before entering his plea.  ECF Doc. 8 at 21.  Petitioner, thus, knew about the victim's mental health situation before his plea and chose to plead guilty anyway.

Petitioner also received quite a reduction in sentence by choosing to plead guilty.  As he was told during the plea colloquy, he faced a fifty (50) year mandatory minimum sentence if he was found to be a Dangerous Sexual Felony Offender, and even without such status, Petitioner's three felonies carried potential life sentences, and his guidelines score was 341.1 months (over 28 years).  ECF Doc. 25-2 at 27-28.  The State offered a 13-year sentence in exchange for a nolo contendere plea on one count.[4]  This significant reduction in sentencing exposure makes it considerably

---

[4] In the Plea Colloquy, the State indicated that it was offering a 15-year sentence.  ECF Doc. 25-2 at 27.  In the written plea agreement, called a "Sentence Recommendation", the State and defense

less probable that Petitioner would have insisted on going to trial if counsel had shared the actual discovery with him.

In sum, Petitioner has not shown that the state 3.850 judge was unreasonable, or even erred at all, in finding Petitioner had not established the prejudice prong under *Strickland* as needed to obtain relief on this IADC count. Therefore, Petitioner is not entitled to habeas relief on Ground One.

## B.    Grounds Two and Three: Judicial Coercion and IADC for Failure to Move to Disqualify the Judge

Petitioner argues in the amended petition that his plea was involuntary because "it is the product of judicial coercion". ECF Doc. 8 at 13. In the 3.850 motion, Petitioner argues the state court judge did not tell Petitioner he "may" receive a 50 year sentence but, instead, "stated that 50 years was the exact sentence that would be imposed." Second Am. Mot. for Post Conv. Relief p. 17, *State v. Baca*, 2016 CF 3542, ECF Doc. 25-1 at 18 (Mar. 1, 2019). Petitioner argues such a definitive statement made think the judge would not consider any mitigating factors. *Id.* Petitioner argues had the judge not "prematurely closed plea negotiations" by telling Petitioner the state's plea would no longer be available, he would have continued to negotiate with the State rather than accept the plea. *Id.* Petitioner claims the alleged judicial coercion constitutes trial court error and counsel was

---

agreed to a 13-year sentence. *Id.* at 19. The judge applied the 13-year sentence recommendation. *Id.* at 32.

ineffective in failing to move to disqualify the judge.  ECF Doc. 8 at 13-14; ECF Doc. 25-1 at 18-19.

The 3.850 judge denied this claim as "entirely without merit and is conclusively refuted by the record."  ECF Doc. 25-4 at 29.  A review of the plea colloquy makes it evident why the state court easily rejected Petitioner's claim as having no factual support.

At the beginning of the plea proceedings, Judge Miller asked the state whether an offer had been made and what it was.  ECF Doc. 25-2 at 26.  The State responded that the offer was for 15 years and while it was "open right now," "the only resolution on Monday would be a plea straight to the Court because the State is not going to keep any sort of an offer open over the weekend."  *Id.*  Thus, as an initial matter, Petitioner's argument that the judge ended plea negotiations is wholly unsupported. It was the State who made clear there would be no continuing negotiations.

Also, during the plea, Judge Miller took pains to make it clear to Petitioner the decision whether to plead was Petitioner's alone to make and for Petitioner to understand the consequences of pleading versus going to trial.  The judge explained "I'm in no way trying to tell you, you should take or not take the plea."  *Id.* at 780. The judge explained to Petitioner he faced a fifty-year mandatory minimum "if" he was found to be a Dangerous Sexual Felony Offender.  *Id.* at 781.  The judge explained that because that was a minimum mandatory, he would have no choice "but to at least give [Petitioner] 50 years" and could give more.  *Id.*  The judge also

instructed Petitioner the State was only offering an agreed plea on that day and that any later plea would be a straight-up plea, which would leave the sentencing decision to the court.  *Id.*

After this explanation, the judge told Petitioner, "I'm not trying to get you to do or don't do anything" and "It doesn't matter to me whether you take that or not take it.  I want you to think about it, talk with your attorney about it, and just let us know what you're going to do, okay."  *Id.*  The judge then adjourned proceedings for Petitioner to discuss his options with counsel.  *Id.* at 782.  There was nothing "coercive" about the judge's conduct or statements.

Because nothing the judge did was coercive, or slightly improper for that matter, Petitioner is also not entitled to relief on Ground Three – claiming counsel was ineffective for not moving to disqualify the judge.  Indeed, Petitioner's reliance on *Wilson v. State*, 845 So. 2d 142 (Fla. 2003) which held that judicial participation in plea negotiations followed by a harsher sentence is one of the circumstances that, along with other factors, should be considered in determining whether there is a "reasonable likelihood" that the harsher sentence was "imposed in retaliation for the defendant not pleading guilty and instead exercising his or her right to proceed to trial," *Id.* at 156, is misplaced.  First, Judge Miller did not participate in plea negotiations.  Second, the state court sentenced Petitioner to the agreed upon plea of 13 years – not the harsher sentence that would have otherwise applied.

Thus, there was no basis for counsel to move to disqualify the judge. An attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted). Therefore, Petitioner is not entitled to habeas relief on Ground Three.

### C. Ground Four: IADC for Failure to Obtain Statements or Depositions of Potential Witnesses

Petitioner argues counsel was ineffective for failing to obtain statements or to depose the victim's former boyfriend, the officer that took the victim to the hospital, Nurse Hall who examined the victim at the ER, or Rodney Filling (an RN who treated the victim on July 1, 2016). ECF Doc. 8 at 18.

The state court denied this claim, finding it to be conclusory and stated, "The failure to depose witnesses, without more, is insufficient to demonstrate ineffective assistance of counsel." ECF Doc. 25-4 at 30. The state court's decision was not contrary to law or a misapplication of the facts.

To allege a facially sufficient claim of ineffective assistance of counsel for failure to call a witness, the movant must state: (1) the identity of the witness; (2) the substance of the witness's testimony; (3) how the omission of this testimony prejudiced the outcome of the case; and (4) that the witness was available to testify at trial. *Haag v. Sec'y, Dep't of Corr.*, No. 8:14-CV-1794-T-35AEP, 2017 WL 6550884, at *9 (M.D. Fla. Sept. 25, 2017). Conclusory allegations are simply not

enough to warrant a hearing." *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011).

Likewise, "[s]peculation about what witnesses could have said is not enough to establish the prejudice prong of *Strickland*." *Jones v. McNeil*, WL 1758740, at *6 (S.D. Fla. Jun. 22, 2009). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); *see Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)).

Nowhere in the second amended 3.850 petition, ECF Doc. 25-1 at 22-23, the amended federal petition, ECF Doc. 8 at 18, or the memorandum in support, ECF Doc. 9 at 8, does Petitioner describe the substance of any of these witnesses' expected testimony or how lacking that testimony prejudiced his case. Thus, Petitioner has not come close to meeting the standard for showing ineffective assistance of counsel for failing to obtain that testimony. Petitioner is not entitled to relief on Ground Four.

### D.   Ground Five: IADC for Failure to Investigate Victim's Mental Health History

Petitioner claims he "informed counsel that the victim was unstable" but that counsel failed "to conduct even a basic investigation" into the victim's lengthy mental health treatment history including several instances of being "Baker Acted."[5] Petitioner argued that "Petitioner would not have plead and [would have] insisted on going to trial" had he known that information.  ECF Doc. 8 at 21-22.

The 3.850 court rejected this claim because, regardless of the victim's mental health history, the victim's account of the events was consistent with the evidence from other sources.  Ord. Denying Def's Mot. for Post-Conv. Relief p.7, *State v. Baca*, 2016 CF 3542, ECF Doc. 24-4 at 28 (June 6, 2019).  Further, Petitioner is not entitled to relief on this ground because Petitioner admits counsel deposed the victim and the doctors who treated her.  ECF Doc. 25-1 at 6.  Therefore, it is clear that counsel did conduct an investigation into the case.  Finally, as noted above, Petitioner cannot show prejudice under *Strickland*, because evidence of the victim's mental health history would not have been admissible at trial.

---

[5] Florida's Mental Health Act, Fla. Stat. § 394.463, frequently known as the Baker Act, provides procedural mechanisms for involuntary examination of people suffering from mental health issues if they meet certain criteria.  *Anderson v. Snyder*, 389 F. Supp. 3d 1082, 1086 (S.D. Fla. 2019).

### E.    Ground Six: IADC for Failure to Utilize Exculpatory Evidence

Petitioner argues counsel was deficient in failing to advise him about potential exculpatory evidence concerning the victim's statements. Although Petitioner does not identify the alleged exculpatory evidence here, he did in his amended 3.850 motion. There, Petitioner claimed the victim was "facing an extremely serious set of criminal charges and a substantially long prison sentence, if convicted" and sent two postcards to state prosecutors that "made it crystal clear that . . . in exchange for a care package and a more lenient sentence the victim would tailor make or fabricate accusations against the Defendant to whatever extreme required by the prosecutor." ECF Doc. 25-1 at 27.

Petitioner attached the postcards to his second amended 3.850 motion. In one postcard, addressed to prosecutor Cassandra Andres, the victim wrote, "I remember things that may be helpful. Can you send me a little care package and visit soon? I'm down for you like 4 flat tires." ECF Doc. 25-1 at 169. In the other, addressed to Lori Sawyer, the victim stated "I'm in need Ms. Lori, I know I may be here for a while, I will still go [forward] though overwhelmed." *Id.* at 171.

The state court denied relief on this claim because "[t]here is no reasonable probability the Defendant would have insisted on going to trial (and risked a potential life sentence and a 50 year minimum mandatory) had he been aware of these statements to the State Attorney." ECF Doc. 25-4 at 31. The state court's determination was neither contrary to law nor a misapplication of the facts.

These postcards would not have undermined the victim's testimony and, thus, would not have caused the Petitioner to forego the favorable plea and go to trial. This is a not a case where the only evidence of Petitioner's guilt was the victim's testimony. To the contrary, as the state court discussed, the victim's description of events was consistent with Detective Savage's account of his initial contact with Petitioner, the security footage, and Nurse Practitioner Peterman's examination of the victim. Also, the victim sent the postcards months *after* she had reported the incident to law enforcement and, thus, had no bearing on her testimony, which was consistent with her initial police report. Petitioner is not entitled to relief on this ground.

## V.  CONCLUSION

### A.  Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.    That the Amended Petition, ECF Doc. 8, be DENIED without an

evidentiary hearing.

2.    That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 6th day of January, 2022.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.